Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 838 | **DATE** | 3/2/2001 |
| **CASE TITLE** | ELIZABETH KINNEY vs. FEDERAL SECURITY INC., et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
       ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Petitioner's motion for a temporary restraining order [12-1] is denied. **ENTER MEMORANDUM OPINION AND ORDER.** Status hearing set on March 20, 2001 at 9:00 AM. The parties shall submit status reports, with scheduling proposals for resolving all remaining issues, to chambers by March 16, 2001.

*Suzanne B. Conlon*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | MAR 0 6 2001 | |
| ✓ | Notified counsel by telephone. | | date docketed | 24 |
| | Docketing to mail notices. | | *mw* docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | 3/2/2001 | |
| SB courtroom deputy's initials | | 01 MAR -5 PM 5: 20 | date mailed notice | |
| | | | jad | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ELIZABETH KINNEY, REGIONAL )
DIRECTOR OF REGION 13 OF THE )
NATIONAL LABOR RELATIONS BOARD, ) No. 01 C 0838
FOR AND ON BEHALF OF THE NATIONAL )
LABOR RELATIONS BOARD, ) Suzanne B. Conlon, Judge
)
Plaintiffs, )
)
v. )
)
FEDERAL SECURITY, INC., AND ITS ALTER )
EGOS OR AGENTS, JAMES R. SKRYZPEK )
AND JANICE M. SKRYZPEK, INDIVIDUALS, )
)
Defendants. )

**DOCKETED**

**MAR 0 6 2001**

## MEMORANDUM OPINION AND ORDER

### BACKGROUND

This action was filed by the National Labor Relations Board ("NLRB") for a temporary injunction to restrain Federal Security, Inc., James R. Skrzypek and Janice M. Skrzypek ("respondents") from prosecuting an ongoing case in an Illinois court against former employees. *Skrzypek, et al. v. Brewer, et al.*, Case No. 00 L 06317 (Circuit Court of Cook County)("the state case").[1] In that case, respondents seek $140,000 in attorneys' fees and court costs from 17 former employees, who allegedly conspired to give false testimony against Federal Security in a purportedly baseless NLRB unfair labor charge they filed eight years ago in retaliation for termination of their

---

[1] The Skrzypeks brought the state case as successors-in-interest of Federal Security, a dissolved corporation.

74

employment. Respondents claim the discharged employees' conduct constitutes malicious prosecution and abuse of process under Illinois law.

The state case was filed on June 2, 2000; it triggered a second NLRB charge by the discharged employees on June 30, 2000. The second NLRB charge contends that the state case is an unfair labor practice to punish the discharged employees for their participation in the original NLRB charge. The NLRB apparently took no action on the second charge until January 29, 2001, when it issued a complaint and notice of hearing. The NLRB hearing is scheduled on March 13, 2001.

Meanwhile, the state court issued a default order against 11 of the former employees in October 2000. Several weeks later, two defaults were vacated on the unopposed motion of those two former employees. Nine defaulted former employees remain; they apparently have taken no action to remedy the defaults entered more than four months ago. Respondents have now moved for a prove-up hearing to reduce the defaults to judgment. This court has not been advised of the prove-up hearing date. However, a hearing on a fully briefed motion to dismiss filed by seven former employees who have appeared in the state case is set on March 6, 2001.

After respondents filed their prove-up motion, the NLRB moved for a temporary restraining order ("TRO") to bar respondents from (1) attempting to enforce or collect on any default judgments obtained in the state case; and (2) "interfering with or coercing" former employees from exercising their right to file NLRB charges or to give testimony in NLRB proceedings. *See* NLRB's proposed Order Granting Temporary Restraining Order. The NLRB requests that the TRO remain in effect until it resolves the unfair labor practices charge arising from the state case. In support of the motion, the NLRB submits only a copy of respondents' motion for default judgment in the state case and this court's scheduling order, and has chosen to rest on the "documentary history" of its litigation against

Federal Security.[2] No affidavits from the defaulted former employees were submitted, nor were any witnesses called to testify at the hearing on the NLRB's TRO motion. The NLRB simply asserted during argument and in its brief that a temporary restraining order is required because the defaulted employees will otherwise suffer irreparable harm. That harm is characterized as financial ruin and injury to reputation. In addition, the NLRB contends that its own administrative processes and credibility with aggrieved employees will be irreparably injured if a TRO is not issued.

## DISCUSSION

### A. Section 10(j) injunctive relief

For purposes of resolving the motion for a TRO, the court assumes jurisdiction under Section 10(j) of the National Labor Relations Act, 29 U.S.C. § 160(j).[3] Section 10(j) authorizes the court to grant injunctive relief pending the NLRB's resolution of the former employees' pending unfair labor practices charge. This interim remedy prevents potential frustration or nullification of the NLRB's remedial authority caused by delays inherent in NLRB administrative proceedings. *Kinney v. Pioneer Press*, 881 F.2d 485, 493-94 (7th Cir. 1989). The burden is on the NLRB to establish that the extraordinary remedy of injunctive relief is just and proper in a particular case. 29 U.S.C. § 160(j). Traditional equitable standards are applied to determine whether the just and proper standard has been

---

[2] The affidavit of the NLRB's Regional Director (and nominal petitioner) Elizabeth Kinney was submitted with the initial petition for a temporary injunction. Kinney's factual assertions are based on "information and belief," and not on her personal knowledge. Thus, the court finds the Kinney affidavit lacks probative value on the TRO issues.

[3] Respondents challenge this court's jurisdiction. Because the TRO motion lacks a sufficient evidentiary foundation, the court need not reach the jurisdiction issue until that issue is adequately briefed. The court presumes jurisdiction because the NLRB has provisionally shown that the present charge may be grounded on retaliation for protected activity by Federal Security's former employees in filing the original charge eight years ago.

3

satisfied. *NLRB v. Electro-Voice, Inc.*, 83 F.3d 1559, 1566-67 (7th Cir. 1998). Accordingly, the NLRB must show by a preponderance of the evidence (1) some likelihood of success on the merits; (2) that there is no adequate remedy at law and irreparable harm will result if the injunction is denied; (3) irreparable harm to the NLRB outweighs threatened harm an injunction would inflict on respondents; and (4) the public interest is served by injunctive relief. *Id.* The likelihood of success and balancing of harms are evaluated on a "sliding scale;" a strong showing under one element may offset a weaker showing under the other. *Id.* at 1568.

**B. Analysis**

### (1) Likelihood of success on the merits

In determining whether the NLRB is likely to prevail in its pending administrative proceedings against respondents for bringing the state case against former employees who previously filed NLRB charges, this court does not resolve the merits of the unfair labor practices claim. Rather, the court's inquiry is limited to a decision whether there is a better than negligible chance the NLRB will succeed on the merits. To satisfy this burden, the NLRB must produce some evidence to support the unfair labor charge, together with an arguable legal theory. Here, this means that the NLRB must demonstrate (1) the state case has no disputed issue of material fact or no genuine legal issues; and (2) the state case was improperly brought with a retaliatory motive. *Bill Johnson's Rest., Inc. v. NLRB*, 461 U.S. 731, 748-49 (1983). Respondents should be allowed to proceed with the state case if there is any realistic chance their legal theories might be adopted by the state court. *Id.* at 747.

It must be noted that the NLRB presently moves to restrain only one aspect of the state case: enforcement and collection of any default judgments that respondents obtain. The NLRB does not seek to restrain the state court from determining the merits of the non-defaulting former employees'

4

fully-briefed motion to dismiss the state case. Indeed, were the state court to grant the dismissal motion, the NLRB would have compelling evidence to satisfy its threshold requirement that the state case presents no genuine legal issue. Dismissal of the state case would likely moot this injunctive action. Conversely, if the state court denies the pending motion to dismiss, respondents would have convincing evidence that their case presents genuine legal or factual issues. Thus, the NLRB's conclusory assertion that there is no good faith basis for the state case is both premature and unsupported.

### (2) Adequate remedy at law and irreparable harm

The NLRB does not challenge the factual basis for the default orders entered more than four months ago. It is uncontested that the defaulted former employees failed to appear (either *pro se* or by counsel) and failed to respond to the complaint; they did not oppose the default motion; *they have taken no action to vacate the default order;* and they have not filed any objection to the motion for a prove-up hearing. Clearly, the defaulted former employees have an adequate remedy at law, as demonstrated by the two former employees who promptly had their defaults vacated by simply filing a motion with the state court. The remaining defaults are undisputedly the result of the defaulters' own inaction in failing to pursue their legal rights and remedies in the state case. Injunctive relief is unwarranted if an employee has chosen not to pursue available and adequate legal remedies.

The NLRB argues that without a TRO, the defaulting former employees would be required to expend their "scarce resources" to defend themselves in the state case and to satisfy any judgment that is entered against them. The record is barren as to the financial resources of the former employees and their present employment circumstances. They are entitled to appear *pro se,* they could have asked the state court to set aside the defaults, and they could have opposed the motion for a prove-up

5

hearing. There is no evidentiary basis to conclude that failure to take these basic steps to protect their interests was the result of indigence. Rather, any resulting financial harm appears to be self-inflicted. Nor is the assertion that the defaulting former employees' reputations would be injured based on anything but conjecture.

Similarly speculative is the NLRB's contention that its administrative processes would be jeopardized and aggrieved employees would be discouraged from filing charges if a TRO were denied. The record is devoid of evidence that any former employee was coerced or intimidated by respondents in order to discourage participation in NLRB proceedings. In sum, no evidence of irreparable harm has been shown.

### (3) Balance of harms

Just as the NLRB has failed to demonstrate that the defaulting former employees would suffer irreparable harm if a TRO is denied, respondents do not show they will be substantially harmed by a TRO that would delay and possibly frustrate their efforts to enforce default judgments. The court finds the balance of harms does not weigh in favor of either side.

### (4) Public interest

The NLRB has failed to demonstrate that restraining respondents from moving forward to enforce their rights under a default order entered four month ago would damage the public interest. There is no evidence that any former employee of Federal Security has been discouraged from filing and prosecuting grievances with the NLRB. Therefore, the public interest is not at stake. *Szabo v. P\*I\*E Nationwide, Inc.*, 878 F.2d 207, 210 (7th Cir. 1989).

## CONCLUSION

The motion for a temporary restraining order is not supported by sufficient evidence to establish that irreparable harm will otherwise result or that the public interest is at stake. Nor has it been established that the state case is baseless and was filed for retaliatory purposes. Accordingly, it is not proper and just on the present record to restrain respondents from pursuing their rights in the state case.

ENTER:

*Suzanne B. Conlon*
Suzanne B. Conlon
United States District Judge

March 2, 2001