# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Judge Suzanne Conlon | Sitting Judge if Other than Assigned Judge | Arlander Keys |
|---|---|---|---|
| **CASE NUMBER** | 01 C 838 | **DATE** | 9/6/2002 |
| **CASE TITLE** | | Elizabeth Kinney v Federal Security Inc | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Currently before the Court is Respondents' Application for Fees and other Expenses under the Equal Access to Justice Act ("EAJA"). This Court recommends granting Respondents' EAJA Application in part and denying the Application in part. Report and Recommendation recommending that Respondents' EAJA Application be granted in part and deny the Application in part is hereby entered of record.. *AK*

(11)xx [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | **SEP 0 9 2002** | |
| ✓ | Docketing to mail notices. | | date docketed | 9? |
| | Mail AO 450 form. | | docketing deputy initials | |
| ✓ | Copy to judge/magistrate judge. | | | |
| | | U.S. DISTRICT COURT | | date mailed notice |
| AC6 | courtroom deputy's initials | | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ELIZABETH KINNEY, REGIONAL DIRECTOR OF REGION 13 OF THE NATIONAL LABOR RELATIONS BOARD, FOR AND ON BEHALF OF THE NATIONAL LABOR RELATIONS BOARD, | ) ) ) ) ) ) ) | No. 01  C  0838<br><br>Judge Suzanne B. Conlon<br><br>Magistrate Judge Arlander Keys |
| Petitioner, | ) ) | |
| v. | ) ) ) | |
| FEDERAL SECURITY, INC., AND ITS ALTER EGOS OR AGENTS, JAMES R. SKRZYPEK AND JANICE M. SKRZYPEK, INDIVIDUALS, | ) ) ) ) ) | |
| Respondents. | ) | |

DOCKETED
SEP 0 9 2002

TO:  THE HONORABLE SUZANNE B. CONLON
     UNITED STATES DISTRICT COURT

## REPORT AND RECOMMENDATION

Currently before the Court is Respondents' Application for Fees and other Expenses under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. 2412 *et seq.* (2001). For the reasons set forth below, this Court recommends granting Respondents' EAJA Application in part, and denying the Application in part.

## PROCEDURAL HISTORY

On June 2, 2000, Federal Security, Inc., James Skrzypek, and Janice Skrzypek (collectively "Respondents") filed suit in state

court against several of its former employees, alleging that
these employees had conspired to give false testimony against
Respondents in a purportedly baseless unfair labor practice
charge before the National Labor Relations Board ("NLRB.") (*See*
Opinion by the Honorable Suzanne B. Conlon dated April 25, 2001
[hereinafter "Conlon Opinion"] at 2).[1]  This lawsuit prompted the
former employees to file a second NLRB charge, alleging that
Respondents' lawsuit was an unfair labor practice designed to
punish the former employees for their participation in the
original NLRB charge filing and investigation.  In October, 2000,
the state court issued default orders against 11 of the former
employees; two of the default orders were subsequently vacated.
(Conlon Opinion at 2.)  Respondents then moved for a prove-up
hearing to reduce the defaults to judgments.

In response, the NLRB filed a request for a temporary
restraining order ("TRO") in federal court in the Northern
District of Illinois, seeking to halt the prove-up of damages in
the state case.  The NLRB argued that an injunction was
warranted, in part, because several of the former employees faced
the prospect of the state court erroneously entering a default
judgment against them, without the possibility of reimbursement,

---

[1] *See Skrzypek, et al. v. Brewer, et al.*,  No. 00 L 06317
(Circuit Court of Cook County, 2000) (hereinafter "state
case").  The Skrzypeks brought the state case as successors-
in-interest of Federal Security.

because, "on information and belief," Respondents lacked the financial resources to repay the default judgments, which were estimated at over $ 71,000.

On March 2, 2001, the district court denied the NLRB's request for a TRO to halt the prove-up of damages in the state court action. The NLRB subsequently requested a TRO to halt the state action in its entirety, which the district court denied on April 25, 2001. The NLRB filed an appeal with the United States Court of Appeals for the Seventh Circuit. Prior to oral argument before the Seventh Circuit, the NLRB ruled on the underlying unfair labor practice charges. The parties requested that the Seventh Circuit dismiss the case as moot, which the Court did on November 27, 2001. The Seventh Circuit remanded the case to the district court, with directions to vacate its judgment and dismiss as moot the NLRB's petition for a TRO. The Seventh Circuit further stated that, on remand, the district court may consider Respondents' request for fees. The district court entered an order vacating its judgment and dismissing the NLRB's petition, as mandated by the Seventh Circuit, on August 1, 2002.

On December 19, 2001, Respondents filed their EAJA Application for fees and costs incurred in defending the NLRB's petition for a TRO, and the NLRB's appeal to the Seventh Circuit. On February 8, 2002, the NLRB filed a motion to dismiss Respondents' EAJA application, arguing that Respondents'

affidavits were insufficient to establish its eligibility for reimbursement under the EAJA. Respondents filed a motion for leave to file supplemental affidavits, or, in the alternative, asking the district court for leave to withdraw the EAJA fee petition and re-file within the EAJA statutory time period. The district court referred the matter to this Court.

On June 6, 2002, this Court recommended that Respondents be permitted to supplement their EAJA application. The district court subsequently adopted the recommendation, and Respondents were granted the opportunity to supplement their submissions to comply with the EAJA's requirements. Despite the supplementation, the government contends that Respondents' application is still deficient, and should be denied.

## DISCUSSION

Under the EAJA, a private party engaged in litigation with the United States may recover its reasonable attorneys' fees and costs from the government, if it satisfies the following requirements: 1) it is a "prevailing party"; 2) the government's position or decision to proceed with the litigation was not substantially justified; 3) the prevailing party submits an itemization of its fees and costs; and 4) its net worth does not exceed a statutory maximum. 28 U.S.C. 2412(d)(1)(A). The statute places the burden of establishing eligibility for fees squarely on the applicant. *Id.*

In this case, the government has only properly challenged[2] Respondents' ability to prove, by a preponderance of the evidence, that they have limited financial resources and are, therefore, entitled to their fees and costs under the EAJA. *See State of Louisiana v. Lee,* 853 F.2d 1219, 1223 (5th Cir. 1988). The government contends that Respondents have failed to submit sufficient evidence demonstrating that their net worth, as a married couple and a business, did not exceed $4,000,000 and $7,000,000, respectively. *See United States v. All Monies ($637,944.57) in Account No. 29-0101-62,* 1991 WL 335150 (D. Haw. Sept. 11, 1991). The government notes that, in support of their claim of eligibility, Respondents have submitted only self-serving, unsupported affidavits, which are fatally deficient and do not enable the Court or the government to determine Respondents' net worth with any degree of certainty or reliability.

Respondents counter that the government's previous contention in the underlying TRO litigation-- that an injunction

---

[2]The government states, without argument, that the court would certainly find that its position in the underlying action was substantially justified. The government's conclusory assertion regarding substantial justification is insufficient. The burden of establishing substantial justification falls squarely on the government, and the government has failed to make such a showing.

was warranted because Respondents did not have sufficient assets to refund potentially defective default judgments-- estops the government from denying that Respondents' net worth is well below the statutory limit. Even if the government is not estopped from attacking their eligibility, Respondents argue, the government has not demonstrated that Respondents are ineligible for fees. Respondents assert that all the government has done is highlight immaterial deficiencies in Respondents' affidavits, without coming forward with affirmative evidence establishing that Respondents' net worth exceeds the EAJA's statutory limit. Given the governments' lack of affirmative evidence, Respondents assert that their affidavits regarding net worth should carry the day. The Court will address each argument in turn.

## A.  Judicial Estoppel

The Respondents' estoppel argument is deceptively attractive. Respondents correctly note that the government previously argued to the district court that a TRO was warranted because Respondents allegedly lacked the financial wherewithal to reimburse the state court defendants (Respondents' former employees) in the event the state court erroneously entered a default judgment. Respondents assert that the default judgments would not have exceeded $72,000, and that, therefore, the government cannot now be heard to complain that the Skrzypek' combined net worth exceeds $4,000,000.

Respondents overstate the government's representations. While the government did express its collectibility concerns in a verified pleading, it qualified its remarks, as being based upon "information and belief." In addition, accepting Respondents' argument would require the Court to ignore the circumstances surrounding the government's representation; at the time the government sought to enjoin the state court proceeding, it was unclear as to what percentage of the Skrzypeks' multi-million dollar fortune would be subject to forfeiture, and what assets might be available to reimburse the state court defendants.

More importantly, Respondents neglect to mention a critical element that must be satisfied before judicial estoppel can apply[3]; judicial estoppel is appropriate only when the party to be estopped has convinced the court to adopt its earlier, contrary position. *See Ogden Martin Sys. Of Indianapolis, Inc. v. Whiting Corp.,* 179 F.3d 523, 526 (7th Cir. 1999) (the doctrine of judicial estoppel prevents a party who *prevails* on one ground in a lawsuit from repudiating the ground in order to have a second victory based upon a contradictory ground); *Ezekiel v. Michel,* 66 F.3d 894, 904 (7th Cir. 1995). It is undisputed that the government did not succeed in convincing the district court

---

[3] Accordingly, Respondents' argument that the government's assertion of a "contrary" position with regard to Respondents' net worth warrants not only finding judicial estoppel, but also imposing sanctions, is patently without merit and does not warrant discussion.

that a TRO or an injunction was warranted, and Respondents have not asserted that the government nevertheless "prevailed" in establishing the Respondents' limited net worth. Therefore, Respondents' estoppel argument is entirely without merit and must be rejected.

## B. EAJA Eligibility

Next, the Court must determine whether Respondents' affidavits are sufficient to establish eligibility under the EAJA. Although there is no consensus as to exactly what an EAJA applicant must submit to demonstrate its net worth, the Court is persuaded by the reasoning in *Fields v. United States,* 29 Fed. Cl. 376 (1993), *aff'd,* 64 F.3d 676 (Fed. Cir. 1995).

In *Fields,* an EAJA applicant claimed that its sworn statements regarding its net worth were sufficient to establish eligibility under the EAJA, particularly because the government failed to offer even "a scintilla of evidence that [the applicant's] net worth or the number of his employees exceeds the EAJA limits." *Id.* at 381. The *Fields* court acknowledged caselaw supporting the applicant's position, *see D'Amico v. Ind. U. of Marine & Shipbuilding Workers,* 630 F. Supp. 919, 922-23 (D.Md 1986) ("there is often no argument by the government that the applicant is not eligible, and, in such cases, other courts have accepted as sufficient proof an applicant's affidavit of net worth,") but declined to follow it.

In finding that the applicant's conclusory affidavit was insufficient, the court noted that: 1) it is the applicant, not the government, who has the burden to establish a prima facie case of eligibility under the EAJA; and 2) the EAJA's waiver of sovereign immunity is to be strictly construed. *Id.* at 382. The *Fields* court explained that "[a] conclusory affidavit without supporting evidence is inadequate to establish such 'party' status. Thus, a petitioner requesting fees under the EAJA *must* present sufficient evidence so that his or her net worth may be ascertained and verified by the court." *Id.* To establish eligibility, EAJA applicants must submit information consistent with generally accepted accounting principles, together with an affirmation that the reported assets and liabilities are complete and accurate. *Id.* at 383; *see also, Mantle Ranches, Inc. v. United States Park Serv.,* 993 F. Supp. 1335, 1337-38 (D. Col. 1998).

In the instant case, the government has challenged Respondents' entitlement to reimbursement under the EAJA from the time the fee application was filed, highlighting the purported deficiencies in Respondents' filings. Respondents were put on notice of the government's challenges, and were given the opportunity to supplement their initial filings. Unfortunately, Respondents have largely squandered the opportunity to persuade the Court that they are EAJA eligible. Under these

circumstances, the Court is of the opinion that caselaw discussing the appropriateness of affidavits alone, where the government has not contested eligibility, is not relevant, *see, e.g., Donahue v.* Heckler, 600 F. Supp. 153, 157 (E.D. Wis. 1985), and instead adopts the reasoning of the *Fields* court.

Under the standard announced in *Fields*, the Court is of the opinion that Mr. & Mrs. Skrzypeks' affidavits are insufficient to establish their eligibility for fees under the EAJA. A cursory review of the Skrzypeks' affidavits clearly shows that they have not submitted information conforming to generally accepted accounting principles. Instead, the Skrzypeks set forth, in a fairly haphazard manner, their valuation of their assets and debts, which are often unsupported by corroborative documentation. The Skrzypeks make only sporadic attempts to value their assets and debts as of February 6, 2001, the date the underlying action was filed; in many instances, no such attempt is made.

Also troubling is the fact that neither Mr. nor Mrs. Skrzypek affirm that their affidavits are complete and accurate. And the Court has reason to suspect that they are neither; for example, while these affiants list the mortgage on their home as a $348,161.77 debt, they fail to mention what equity they might have in that property and/or why that equity should not be considered in calculating their net worth. In their reply brief,

the Skrzypeks purport to demonstrate that their sloppy submission
is, at most, harmless error, because the government has failed to
come forward with evidence indicating that the couple's assets
even approach the $4 million mark. But what the government has
done, quite persuasively, is to demonstrate that the Skrzypeks'
submissions are likely incomplete, inconsistent, and unreliable.

As in *Fields,* this Court rejects Respondents' assertion
that, absent concrete evidence by the government indicating that
their net worth exceeded the statutory minimum, their conclusory,
self-serving affidavits are sufficient to establish their
eligibility. The obligation is on Respondents to establish
eligibility in the first instance. And while the Skrzypeks'
affidavits tend to indicate somewhat limited resources, given the
substantial amount of assets that Mr & Mrs. Skrzypek purportedly
held in 1997 (upwards of $19 million), and the tainted,
forfeitable assets they admittedly held as of July, 2002 (over $4
million), the Court refuses to "speculate that the probabilities
are that [the Skrzypeks] meet[] the net worth eligibility
requirements of the EAJA." *Fields,* 29 Fed. Cl. at 383.
Therefore, the Court recommends that the district court reject
Mr. & Mrs. Skrzypek's EAJA application.

Nevertheless, it appears that the Skrzypeks' former company,
Federal Security, Inc., is entitled to attorneys' fees under the
EAJA. In their affidavits, the Skrzypeks assert that Federal

Security was dissolved in 1997, that it did not have assets in excess of $7,000,000 or employ 500 workers at that time, explaining that Mr. & Mrs. Skrzypek received all of the company's assets upon dissolution. *See* 28 U.S.C. 2412(d)(2)(B). In addition, Respondents have presented research demonstrating that Federal Security was involuntarily dissolved by the State of Illinois on August 1, 1997, and that it was not an operating entity after that date.

Given the Respondents' evidence regarding the involuntary dissolution of Federal Security in 1997, the Court is of the opinion that Federal Security has established its eligibility under the EAJA.[4]

---

[4] In its Motion to Dismiss Respondents' EAJA Application, the government argued, without citation to any authority, that Federal Security could not be an eligible party under the EAJA because it was dissolved prior to February 6, 2001. *See generally, Head Start Family Educ. Program, Inc. v. Cooperative Educ. Serv. Agency 11,* 46 F.3d 629, 635 (7th Cir. 1995)(the Court does not have a duty to research and construct legal arguments available to a party.) The government makes no similar argument in its Response to the Respondents' Amended EAJA Application, and such argument is, Respondents argue, waived. The Court notes that, even if the government had pursued this argument, there is no reason to presume that the EAJA limits the definition of a party to a viable entity. The government decided to sue Federal Security in 2001, even though it had been dissolved in 1997, and it was entitled to representation to defend against the government's suit. Federal Security, along with Mr. & Mrs. Skrzypek, prevailed in defending that lawsuit, and the government has offered no persuasive explanation as to why Federal Security should not be entitled to fees under the EAJA.

## C. The Fee Petition

A party establishing eligibility under the EAJA is entitled to recover their reasonable attorneys fees and costs. *Hensley v. Eckhart,* 461 U.S. 424, 437 (1983). In reviewing a fee application, the Court considers the reasonableness of both the rate charge and the hours expended.

### 1. Reasonable Hourly Rate

Unlike most fee-shifting provisions, the EAJA explicitly caps the recoverable hourly rate at $125. 28 U.S.C. 2412(d)(2)(A). However, a higher hourly rate is justified if: 1) the prevailing party demonstrates the existence of a special factor, "such as the limited availability of qualified attorneys for the proceedings involved," *In re: Sealed Case 00-5116,* 254 F.3d 233 (D.C. Cir. 2001); or 2) the party demonstrates that a justifiable cost of living increase is appropriate. *See Sayles v. Barnhart*, No. 00 C 7200, 2002 WL 989455, at *3 (N.D. Ill. May 14, 2002).

Counsel for Respondents argue that they are entitled to recover fees at or near their billable rates, which are considerably higher than the EAJA's $125 rate, because of their extensive experience with labor law and 10(j) injunction litigation. However, caselaw instructs that expertise in a particular area of law does not justify higher reimbursement rates. *In re: Sealed Case 00-5116,* 254 F.3d at 235-36. ("'If

13

expertise acquired through practice justified higher reimbursement rates, then all lawyers practicing administrative law in technical fields would be entitled to fee enhancements.'") The Supreme Court has explained that the special factors exception applies only where "such qualifications are necessary and can be obtained only at rates in excess of the [$125] cap." *Pierce v. Underwood,* 487 U.S. 552, 572 (1988)(the EAJA's enhancement provision requires attorneys to possess "some distinctive knowledge or specialized skill needful for the litigation in question" such as "patent law, or knowledge of foreign law or language.")

While it may be true that counsel for Respondents specialize in labor law and 10(j) injunction litigation, and that their vast experience justifies their typical billing rates, Respondents have fallen short of demonstrating that these qualifications were necessary, as opposed to merely desirable, to defend this case. *In re: Sealed Case 00-5116,* 254 F.3d at 236. Therefore, the Court rejects their request for enhanced fees under the special factors exception.

Respondents also assert that a cost of living enhancement is appropriate in this case. Respondents present evidence indicating that the Consumer Price Index increased from 155.7 in March 1996, when the EAJA increased available attorneys' fees to $125, to 176.9 in April, 2001, roughly concurrent with counsels'

representation in this matter. Respondents contend that a corresponding 13.6% in the EAJA rate to $142 per hour is, therefore, in order. The government has failed to address this argument entirely. The Court agrees with Respondents that the cost of living adjustment is appropriate, and well supported by caselaw. *Sayles,* 2002 WL 989455, at *3 (raising the rate to over $141 as of March 2001). The Court recommends awarding Respondents' fees at $142 per hour for attorneys with a market rate that exceeds $142.00 per hour, and to award the remaining attorney and paralegal time at the requested hourly rate.

### 2. The Reasonableness of the Time Expended.

Respondents' Fee Petition is divided into 4 Schedules; Schedule A represents work performed by attorneys at Seyfarth Shaw during the TRO, the injunction proceedings, the government's appeal to the Seventh Circuit, and preparation of the EAJA Application. Schedule B represents work performed by attorneys at Levin, McParland, Phillips & Minetz, LLC (the "Levin firm"). The Levin firm, which represented the Skrzypeks in the state court action, assisted the attorneys at Seyfarth Shaw in defending against the government's request for injunctive relief. Schedules C and D detail counsels' costs.

The government contends that several entries in Schedule A document excessive time, highlighting entries for Seyfarth Shaw attorney A. Lipson. The Court has reviewed the challenged

15

entries, and agrees with Respondents that the entries are not unreasonable in light of the time constraints and the complexity of the case[5].

The government fares better with its contention that several entries document time spent on tasks unrelated to the EAJA proceeding. The Court is of the opinion that time spent on tasks primarily related to the underlying unfair labor practice charge, and the complaint and hearing before the National Labor Relations Board ("NLRB") are not recoverable. Many of these tasks are documented in entries that also record time spent on the EAJA proceeding. Because Respondents have "blocked billed," the Court is unable to determine what portion of time was devoted to impermissible tasks in certain instances. In these cases, the Court reduced the requested time by one half[6].

---

[5] The government does not contest counsel's entitlement to fees for preparing the EAJA fee petition or for defending against the government's appeal to the Seventh Circuit.

[6] A 50% reduction for block billing may appear excessive. *Compare, Reyes v. Nations Title Agency of Illinois, Inc.,* No. 00 C 7763, 2001 WL 687451, at *2 (N.D. Ill. June 19, 2001) (reducing the amount of fees block-billed by 10%). But the instant case warrants the more drastic reduction for two reasons. First and foremost, block billing is problematic in this case, not simply because it prevents the Court from assessing the reasonableness of time spent on each task, but, more importantly, because it prevents the Court from determining the amount of time spent on compensable versus non-compensable tasks. Second, although Federal Security and the Skrzypeks were represented jointly, by the same counsel, only Federal Security is entitled to its fees. However, it is virtually impossible to segregate fees relating to Federal Security from those relating to the Skrzypeks, since their interests overlapped perfectly. Therefore, the Court is of

The Court finds that the following entries in Schedule A should be excluded or reduced: 1) A. Lipson 2/8/01 entry (reduce by ½); 2) D. Darch 2/9/01 entry (reduce by ½); 3) D. Darch 2/14/01 entry (reduce by ½); 4) R. Lapp 3/12/01 entry (exclude); 5) all D.Darch 3/12/01 entries (exclude) 6) A. Lipson 8/20/01 entry (reduce by ½); 7) A. Lipson 11/05/01 entry (reduce by ½); 8) A. Lipson 11/30/01 entry (reduce by ½); 9) A. Lipson 12/03/01 entry (reduce by ½); and 10) A. Lipson 12/05/01 entry (reduce by ½). The time entry for, apparently, A. Lipson on the top of page 12 of the fee petition is illegible, and the Court has not awarded time for this entry.

The government challenges counsel's entitlement to fees listed in schedule B. The government correctly notes that the Levin firm represented Respondents in the state court action, not the EAJA proceeding, and that fees for such representation are not recoverable. Respondents attack the government's position as overly simplistic. Respondents note that the underlying state court case was intricately woven into the government's request for injunctive relief, and that the government insisted that discovery was unnecessary in the federal case, because it would be duplicative of the parties' state court efforts.

---

the opinion that a more substantial reduction, ie. by one half, for block billing is in order.

As stated above, the Court agrees that time spent representing Respondents in the underlying state court unfair labor practice case is not compensable. But the Court finds that the Levin firm assisted in representing Respondents in the federal court EAJA action by supplying necessary pleadings and information from the state court case (i.e., Judge Bronstein's denial of the employees' motion to dismiss Respondents' state court claim supported Respondents' position in federal court that the case had merit and was not retaliatory.) This assistance was necessitated by the government's position that the parties should rely on discovery from the state court case, and counsel should be compensated for their assistance.

Consistent with these findings, the Court finds that the time requested in Schedule B is appropriate, with the following exceptions[7]: 1) SML 2/13/01 entry (reduced by ½); 2) VAL 2/13/01 entry (excluded); 3) SLW 2/14/01 entry (reduced by ½) ; 4) SLW 2/15/01 entry (excluded); 5) SLW 2/ 16, 17, and 19/01 entries (reduced by ½);6) SLW 3/08/01 entry (reduced by ½); 7) SLW 3/13/01 entry (excluded); 7) SLW 3/28/01 entry (reduced by ½); 8) VAL 4/16/01 entry (excluded); 9) SLW 4/17/01 entry (reduced by ½); 10) SLW 4/18/01 entry (excluded); 11) attorneys' 5/02/01

---

[7] Once again, entries which "block bill" for permissible and impermissible tasks are reduced by one half. Where it is not clear that the entry related to the federal court EAJA proceeding, the Court has disallowed the entry.

entries not compensable, however, no charge by the Levin firm; 12) SLW's 5/03/01 entry (reduced by ½).

The government has not challenged Respondents' entitlement to counsel's costs, paralegal rates, or paralegal fees. The Court recommends granting Respondents' fee petition in this regard. The Court recommends awarding Respondents the following fees and costs:

| | |
|---|---|
| $ 51,457.25 | 362.375 Hours Seyfarth Attorney Time at $142/hour. |
| $ 5,460.00 | 45.50 Hours Seyfarth Paralegal Time at $120/hour. |
| $ 500.00 | 4 Hours of Attorney VAL time at $125/hour. |
| $ 21.30 | .15 Hours of Attorney SML time at $142/hour. |
| $ 2,209.50 | 24.55 Hours Attorney SLW time at $90/hour. |
| $ 250.00 | 5 Hours Paralegal MCL time at $50/hour. |
| $ 2,352.42 | Total Miscellaneous Costs. |
| $62,250.47 | Total Recoverable Fees and Costs |

## CONCLUSION

Mr. & Mrs. Skrzypek have obviously lost significant assets to forfeiture. Nevertheless, the Skrzypeks' submissions fail to comport to generally accepted accounting practices, and appear to be incomplete and inconsistent. The Court is of the opinion, however, that Respondents have established, by a preponderance of

19

the evidence, that Federal Security is eligible for fees under the EAJA. While most of the fees submitted were reasonable, the Court recommends reducing those fees that did not arise from representation in the EAJA federal court proceedings. This Court recommends that the EAJA Fee Application be granted, in part, and that $62,250.47 be taxed against the government, and in favor of Respondents.

DATED: September 6, 2002     RESPECTFULLY SUBMITTED:


ARLANDER KEYS
United States Magistrate Judge



Counsel have ten days from the date of service to file objections to this Report and Recommendation with the Honorable Suzanne B. Conlon. *See* FED. R. CIV. P. 72(b); 28 U.S.C. § 636(b)(1). Failure to object constitutes a waiver of the right to appeal. *Egert v. Connecticut Gen. Life Ins. Co.,* 900 F.2d 1032, 1039 (7th Cir. 1990).